**FILED**
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

JAN 2 3 2013

JAMES W. McCORMACK, CLERK
By: _Jane Romeyny_
DEP CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
AT JONESBORO

GASPAR PEREZ and,
PERLA MARIA FRANCO CADENA,

    Plaintiffs,

v.

FAMILY DOLLAR SERVICES, INC.
FAMILY DOLLAR STORES OF ARKANSAS, INC.,
and FAMILY DOLLAR STORES, INC.,

    Defendants.

Civil Action No. _3:13-cv-00019 DPM/JTR_
JURY DEMANDED

This case assigned to District Judge _MARSHALL_
and to Magistrate Judge _RAY_

## COMPLAINT

COMES NOW, Plaintiffs Gaspar Perez ("Mr. Perez") and Perla Maria Franco Cadena ("Ms. Cadena") (collectively "Plaintiffs") by and through their undersigned counsel and file this Complaint for monetary damages against Defendant Family Dollar Services, Inc. ("Family Dollar Services") Defendant Family Dollar Stores of Arkansas, Inc. ("Family Dollar Stores"), and Family Dollar Stores, Inc. ("Family Dollar, Inc.") (collectively "Defendants" or "Family Dollar").

## I. INTRODUCTORY STATEMENT

This is a case involving catastrophic injuries and damages. The Plaintiffs are requesting damages in excess of Eighteen Million Dollars ($18,000,000). Plaintiff Gaspar Perez is suing Family Dollar based upon claims of negligence, gross negligence, negligent hiring, negligent retention, and breach of contract. Mr. Perez's wife, Plaintiff Perla Maria Franco Cadena, is suing Family Dollar for loss of consortium. On April 16, 2010, Mr. Perez was working on a metal rack

1

and shelving system installation project at Family Dollar's premises. His job required that he regularly work more than twenty (20) feet above a concrete floor. Mr. Perez was not provided any safety training, nor was he provided any safety equipment, a harness or any other form of fall protection while engaged in this above-grade work. While Mr. Perez was working, the metal shelving collapsed, suddenly and without warning, causing Mr. Perez to fall more than twenty (20) feet to the concrete floor below. Family Dollar utilized incompetent, unsafe, and uninsured contractors; and, untrained managers, supervisors and laborers worked on this project. Workers such as Mr. Perez were provided with no safety training, no safety equipment, and no fall protection while installing the metal rack and shelving system.

Mr. Perez suffered massive permanent injuries, including but not limited to, permanent paraplegia which will confine him to a wheelchair for the rest of his life. Mr. Perez's injuries include lacerations, concussion, rib fractures, hernia, ankle fracture, and fracture of the lower thoracic spine resulting in complete paraplegia from the waist down and requiring that he undergo a spinal decompression and fusion from T9 to L3 and a complete laminectomy at T12. Mr. Perez now is required to wear adult diapers and utilize catheters and suppositories. He can no longer engage in sexual relations. He has been forced to undergo extensive hospitalization and physical therapy. He has suffered other orthopedic, neurological, psychological and psychiatric injuries, the full extent of which have yet to be determined. He has in the past and will in the future continue to require medicines, medical aid, medical care, treatment and rehabilitation, at significant cost. He has in the past and will in the future continue to suffer agonizing aches, pains, suffering and mental anguish. He has in the past and will in the future continue to be permanently disabled from performing his usual duties, activities, occupations and avocations, all to his great loss and detriment. He has sustained a loss of earnings and a loss of

future earning capacity. He has endured great pain and suffering. He has in the past and will in the future continue to suffer the loss of life's pleasures as a result of his injuries.

Plaintiffs suffered these massive injuries, damages and loss of consortium as a result of Family Dollar's actions and/or inactions as set forth more fully herein, all of which amount to negligence, gross negligence, negligent hiring, negligent retention and breach of contract.

## II. PARTIES

1.      Mr. Perez is an adult individual residing at 1571 Beaver Trail Drive, Memphis, Tennessee 38016.

2.      Ms. Cadena is Mr. Perez's wife.

3.      Family Dollar Services is a North Carolina corporation authorized to do business in the State of Arkansas. Family Dollar Services' registered agent for service of process is The Corporation Company, 124 West Capitol Avenue, Suite 1900, Little Rock, Arkansas 72201.

4.      Family Dollar Stores is an Arkansas Corporation whose registered agent for service of process is The Corporation Company, 124 West Capitol Avenue, Suite 1900, Little Rock, Arkansas 72201.

5.      Family Dollar, Inc. is a Delaware Corporation whose registered agent for service of process is The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801.

## III.  JURISDICTION AND VENUE

6.     This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332, inasmuch as there exists complete diversity of citizenship between Plaintiffs and Defendants and the amount in controversy is in excess of $75,000.

7.     Venue for this action properly lies in the United States District Court for the Eastern District of Arkansas pursuant to 28 U.S.C. § 1391 inasmuch as all or a substantial part of the actions, events or omissions giving rise to the claims alleged in the Complaint happened on Family Dollars' West Memphis Distribution Center premises located at 1800 Family Dollar Parkway, West Memphis, Arkansas 72303-2974, which is within this judicial district.

## IV.  FACTS

8.     On or about February 11, 2010, Family Dollar entered into a Purchase Agreement ("the Contract") with Warehouse Wholesaler.com, Inc. ("Warehouse Wholesaler") for the purchase and installation of a Full Case Pick Module at Family Dollars' West Memphis Arkansas Distribution Center ("the Project").  An authentic and executed copy of the Contract is attached hereto as Exhibit A.  The Contract outlines the duties and responsibilities of Warehouse Wholesaler and Defendants, as well as the duties and responsibilities of any Subcontractor hired by Warehouse Wholesaler or its Subcontractors.

9.     The Project included the installation of large metal shelving.  Under the terms of the Contract, Warehouse Wholesaler was to provide materials, equipment and labor for the Project.

10.     At all times material hereto and referred to herein, Defendants acted by and through their agents, servants, employees, workmen, and/or their ostensible agents, who were acting within the course and scope of their employment and within the scope of their authority.

11.     Upon information and belief, Family Dollar developed, managed, owned and/or controlled the property upon which the Project was constructed.

12.     Article 10 of the Contract required that all work performed on the Project be performed in a workmanlike manner and in compliance with OSHA standards.

13.     Article 11 of the Contract required that all of the equipment used at the job site was to comply with OSHA standards and other applicable laws, codes and regulations.

14.     Warehouse Wholesaler was required pursuant to Article 26 of the Contract to maintain insurance with the minimum limits of: General Liability $2,000,000 each occurrence, Workers' Compensation in statutory limits for the State of Arkansas, and Umbrella Liability in the amount of $10,000,000 for each occurrence.

15.     Family Dollar and its subsidiaries, affiliates and partnerships were to be named as additional insureds under Warehouse Wholesaler's General Liability policy.

16.     Warehouse Wholesaler was to provide evidence of the required insurance in the form of a Certificate of Insurance no later than ten (10) days after the execution of the Contract.

17.     It was Family Dollar's responsibility, obligation and duty to ensure that Warehouse Wholesaler provided proof of the insurance coverages referenced in the preceding paragraphs.

18.     Pursuant to Article 28 of the Contract, Family Dollar had the authority to terminate Warehouse Wholesaler if it failed to provide the proof of insurance coverage referenced in the preceding paragraphs.

19.     Pursuant to Article 26 of the Contract, Warehouse Wholesaler was to require all of the Subcontractors to procure and maintain General Liability in the amount of $2,000,000 each occurrence, $5,000,000 aggregate; Umbrella Liability in the amount of $10,000,000 each occurrence, $10,000,000 aggregate; and, Workers' Compensation insurance in the statutory amount for the state in which the work is performed; and, Employers Liability insurance in the amount of $1,000,000 each accident; $1,000,000 each employee-disease; and $1,000,000 policy limit-disease.

20.     Warehouse Wholesaler was also to require the Subcontractors to provide Family Dollar with Certificates of Insurance within 10 days of the execution of any agreement between Warehouse Wholesaler and any Subcontractor.

21.     It was Family Dollar's responsibility, obligation and duty to ensure that the Subcontractors provided proof of the insurance coverages referenced in the preceding paragraph.

22.     Pursuant to Article 28 of the Contract, Family Dollar had the authority to cancel the contract with Warehouse Wholesaler and thereby its Subcontractors for material breach or failure to comply with any provision of the Contract.

23.     Family Dollar had the authority to terminate Warehouse Wholesaler's Subcontractors if they failed to provide the proof of insurance coverage referenced in the preceding paragraphs.

24.     Additionally, Warehouse Wholesaler was required pursuant to Article 15 of the Contract to provide Family Dollar with a list of all Subcontractors to be used on the Project no later than 60 days prior to the commencement of the Project.

25.     Pursuant to Article 15 of the Contract, Family Dollar retained the right, at its sole discretion, to disqualify any Subcontractor proposed by Warehouse Wholesaler for good cause. It was Family Dollar's responsibility, obligation and duty to ensure that only properly insured Contractors and Subcontractors were permitted to work on the Project.

26.     Family Dollar owed a duty to Mr. Perez to provide a safe working environment in compliance with OSHA and other regulations.

27.     Family Dollar failed to provide a safe working environment, resulting in injuries and damages to Mr. Perez.

28.     In the alternative, Family Dollar assumed the duty to provide Mr. Perez a safe working environment in compliance with OSHA and other regulations, as well as Family Dollar's own policies, and Family Dollar failed to provide a safe working environment, resulting in injuries and damages to Mr. Perez.

29.     Pursuant to Article 19 Subpart (A)(13) of the Contract, Family Dollar assumed a duty to provide safe working conditions by providing site rules and safety regulations applicable to the work done by the Contractors and Subcontractors working on the Project.  Family Dollar agreed to provide suitable working conditions.  (Exhibit A, Contract Article 19 Subpart (A)(13)).

30.     All work performed under the Contract was to be performed in a manner which did not jeopardize the safety of any personnel working on the Project. (Exhibit A, Contract Article (19)(A)).

31.     The Contract required strict compliance with the "Job Site Work Rules" for all representatives of Warehouse Wholesaler's installation crews and the Subcontractors working on the Project.

32.     The Contract's "Job Site Work Rules" provided in part as follows:

> The following items are [Family Dollar Services'] company policy and shall be strictly adhered to by [Warehouse Wholesaler] and all Subcontractors. **Failure to provide any of the following items shall be sufficient cause for immediate dismissal**.
>
> …
>
> 4.   Employees must be properly attired for work being performed in accordance with the Occupational Safety and Health Administration Requirements.
>
> …
>
> 13.  Gross negligence, gross carelessness, or willful acts which result, or could result, in damage to Owner's property or equipment and/or injury to other employees will not be tolerated.
>
> …
>
> 17.  All employees of a steel erector will be required to wear an OSHA approved safety belt when working above grade, without exception.  All employees of other trades are to wear OSHA approved safety belts when working in hazardous conditions as defined by OSHA.
>
> 18.  [Warehouse Wholesaler] is required to attend all safety meetings held by [Family Dollar] or [Family Dollar's] authorized representative. [Warehouse Wholesaler's] on-site supervisor is required to attend and sign a form stating that he attended the meeting.  In addition, the Subcontractor is required to hold formal weekly safety meetings with his personnel. Minutes are to be made of this meeting and a copy sent to [Family Dollar] for the project file.

Exhibit A, Contract Article 19 Subparts (B) (B.4)(B.13)(B.17) and (B.18)  (emphasis added)

33.     Failure to comply with any of the Job Site Work Rules was sufficient cause for Family Dollar to immediately dismiss Warehouse Wholesaler and its Subcontractors.  (Exhibit A, Contract Article 19 Subpart (B)).

34.     On or about February 25, 2010, Warehouse Wholesaler provided  Family Dollar a Certificate of Insurance, evidencing its insurance coverages as required by the Contract.  A copy of the insurance certificate evidencing Warehouse Wholesaler's insurance coverage is attached as Exhibit B.

35.     Upon information and belief, Warehouse Wholesaler had no workforce that could perform the labor required by the Contract.  Upon information and belief, Warehouse Wholesaler advised Family Dollar of this fact, and advised that Warehouse Wholesaler would be hiring a Subcontractor or Subcontractors to perform the labor required by the Contract.

36.     Upon information and belief, Warehouse Wholesaler cancelled its insurance on February 26, 2010, fifteen (15) days after the signing of the Contract with Family Dollar.  Copies of correspondence dated June 11, 2010 and July 2, 2010 from Utica National Insurance group advising of the cancellation are attached hereto collectively as Exhibit C.

37.     Pursuant to Article 26 of the Contract, Family Dollar was to be provided with thirty (30) days' notice in the event of modification, cancellation or nonrenewal of Warehouse Wholesaler's insurance.

38.     Despite the fact Warehouse Wholesaler's liability insurance was cancelled and despite the fact that Family Dollar had the authority pursuant to the Contract to terminate

Warehouse Wholesaler for the cancellation of insurance, Family Dollar allowed Warehouse Wholesaler to keep working on the Project.

39.     Family Dollar failed to ensure that Warehouse Wholesaler was properly insured pursuant to the terms of the Contract.

40.     Upon information and belief, subsequent to the signing of the Contract, Warehouse Wholesaler hired Zakrak Installations ("Zakrak") as a Subcontractor to assist in finding workers to perform some of the labor required under the Contract.

41.     Upon information and belief, Zakrak failed or refused to provide evidence of insurance in violation of the terms of the Contract.

42.     Upon information and belief, Zakrak did not have the requisite insurance.

43.     In violation of the requirements of Article 26 of the Contract, Family Dollar failed to ensure that Zakrak was properly insured.

44.     Under the terms of Article 15 and Article 26 of the Contract, Family Dollar had good cause to disqualify Zakrak as a Subcontractor due to Zakrak's lack of proof of insurance.

45.     Despite Zakrak's lack of insurance and/or lack of evidence of insurance, Family Dollar did not disqualify Zakrak.

46.     Upon information and belief, subsequent to the signing of the Contract, Subcontractor Zakrak located MIM Installations ("MIM") for Warehouse Wholesaler to perform some of the labor required under the Contract.

47.     Upon information and belief, MIM failed or refused to provide evidence of insurance in violation of the terms of the Contract.

48.     Upon information and belief, MIM did not have the requisite insurance.

49.     In violation of the requirements of Article 26 of the Contract, Family Dollar failed to ensure that MIM was properly insured.

50.     Under the terms of Article 15 and Article 26 of the Contract, Family Dollar had good cause to disqualify MIM as a Subcontractor due to MIM's lack of proof of insurance.

51.     Despite MIM's lack of insurance and/or lack of evidence of insurance, Family Dollar did not disqualify MIM.

52.     MIM hired Mr. Perez to perform work at the Project.  Mr. Perez was hired by MIM's owner Marcelino Zavala ("Mr. Zavala").

53.     At all times material hereto, the work performed by Mr. Perez on the Project was performed on Family Dollar's premises.

54.     During the entire period of time he worked on the Project at Family Dollar's premises, Mr. Perez never received any training regarding OSHA regulations or safety.

55.     During the entire period of time he worked on the Project at Family Dollar's premises, Mr. Perez and other workers were regularly required as part of their job to work above grade at a height that OSHA regulations and Family Dollar's policies required the use of OSHA approved safety belts.  Mr. Perez was never advised of this fact, and was never provided any fall precaution safety equipment.

56.     As an employee of a Subcontractor performing work on the Project, Mr. Perez was an intended third-party beneficiary of the Contract.

57.     Mr. Perez was entitled to the protections of the Job Site Work Rules required by Family Dollar.  Indeed, those Job Site Work Rules were instituted for the specific purpose of providing safety and protection to workers such as Mr. Perez.

58.     Pursuant to the terms of the Contract, Family Dollar had and assumed a duty to ensure that all Subcontractors obtained the required insurance and provided evidence of same as required by the Contract.

59.     Family Dollar had a duty to remove and terminate any Subcontractors working on the Project who failed to provide proof of the required insurance in violation of the Contract.

60.     Upon information and belief, Family Dollar inspected and supervised the Project consistent with the Contract and Family Dollar employees worked in close proximity and observed the work being performed by Gaspar Perez and others which clearly violated Family Dollar's "Job Site Work Rules."

61.     Further, Family Dollar had and assumed a duty to ensure that all Subcontractors working on its premises:  (1) worked safely; (2) had adequate safety equipment; (3) had adequate job training; and, (4) were provided with safety training necessary to ensure their own safety and the safety of their employees at all times.

62.     As a worker on the Project, Mr. Perez was an intended third-party beneficiary of the Contract between Family Dollar and Warehouse Wholesaler that concerned safety, insurance and rules, OSHA regulations and Family Dollar's policies.

63.     As an intended third-party beneficiary of the Contract, Mr. Perez had a reasonable expectation that he would be provided with proper equipment to perform the work he was hired to perform and that the premises would be safe and free from hazards.

64.     However, Family Dollar did not require Warehouse Wholesaler to adhere to the requirements contained within the Contract.

65.     Specifically, neither Mr. Perez, nor any other employees hired by MIM were provided with a safety belt or other safety equipment required by OSHA, Family Dollar's policies and the Contract.

66.     The actions of Family Dollar, Warehouse Wholesaler, Zakrak, and MIM constituted gross negligence and gross carelessness in violation of the Contract.

67.     Upon information and belief, MIM did not hold formal weekly safety meetings with its employees in violation of Article 19 Subpart (B)(18) of the Contract.

68.     Upon information and belief, MIM did not provide copies of Minutes to Family Dollar concerning meetings it was required to hold with its employees in violation of the Contract.

69.     Mr. Perez started working for MIM at the Project in March of 2010.

70.     On April 16, 2010, Mr. Perez was working at the Project on Family Dollar's premises.

71.     Mr. Perez was not provided with any training regarding fall precaution, despite the fact his job regularly required him to work above grade.

72.    In performing the work required by the Project, Mr. Perez and other employees routinely worked twenty or thirty feet above grade.  This above-grade work was performed by Mr. Perez and others for several weeks prior to April 16, 2010.  Mr. Perez and others performed this above-grade work in the presence of Family Dollar employees.

73.    Upon information and belief, no one from Warehouse Wholesaler, Zakrak, MIM, or Family Dollar ever required or suggested that Mr. Perez or other employees working above grade be given a safety belt or any fall precaution equipment.

74.    OSHA regulations require fall protection equipment when working six (6) feet above grade.

75.    On April 16, 2010, Mr. Perez was instructed to work at the Project on metal shelving more than twenty (20) feet above a concrete floor.  Mr. Perez almost fell when he stepped onto a piece of metal that had not been welded.

76.    After Mr. Perez almost fell, he notified Mr. Zavala regarding this issue and Mr. Zavala instructed Mr. Perez to work in a different location.

77.    Despite the fact that Mr. Perez almost fell, no fall protection equipment was offered.

78.    Mr. Perez did as instructed and proceeded to work in a different location. However, when Mr. Perez stepped on a piece of metal, it had not been welded either, and it collapsed, causing Mr. Perez to fall over twenty (20) feet to the concrete floor below.

79.     Had Family Dollar adequately inspected and supervised the work being performed by Warehouse Wholesaler and MIM, Mr. Perez would have been wearing fall protection equipment and would not have fallen.

80.     Had Family Dollar complied with its duty to provide Mr. Perez a safe working environment, Mr. Perez would have been wearing fall protection equipment and would not have fallen.

81.     Had Family Dollar enforced the provisions contained within the Contract, enforced Family Dollar's own polices, and required compliance with OSHA regulations, Mr. Perez would have been wearing fall protection equipment and would not have fallen.

82.     Had Family Dollar enforced the provisions of the Contract, Warehouse Wholesaler would have been removed from the Project, and Mr. Perez would not have fallen.

83.     Had Family Dollar enforced the provisions of the Contract, Zakrak and MIM would not have been working on the Project, and Mr. Perez would not have fallen.

84.     As a result of the fall sustained by Mr. Perez on April 16, 2010, he suffered severe injuries of a permanent nature more fully described herein, including most significantly but not limited to, two fractures to his spine, rendering him a paraplegic for the rest of his life.  Mr. Perez was age thirty-two (32) at the time of the fall.  Mr. Perez endured and continues to endure great pain and suffering.

85.     After the accident of April 16, 2010, Mr. Perez was transported via helicopter to the Regional Medical Center at Memphis, Tennessee ("the Med") where he underwent surgery and rehabilitative treatment.

15

86.     Mr. Perez sustained unstable fractures to his thoracic spine T11-12, rib fractures at L4-11, and left L1 transverse process fracture.  He underwent surgery for insertion of pedicle screw fixation and fusion from T9-L3.   He had a total laminectomy and spinal cord decompression at T12.

87.     Mr. Perez has received rehabilitative treatment which included upper body strengthening, core stabilization, and lower body exercises to prevent contractures, atrophy, spasms and stiffness.  Mr. Perez received rehabilitation to enable him to transfer himself from his bed to a wheelchair, from his wheelchair to the toilet, from his wheelchair to the bathtub.  He also received rehabilitative treatment in performing daily living activities such as relieving himself and dressing and bathing himself.

88.     Mr. Perez remained at the Med and the Med's Rehabilitation Hospital until on or about June 1, 2010.  At the time he was discharged from the hospital, it was noted that he would need continued assistance and supervision with daily living needs.

89.     As a result of the injuries Mr. Perez sustained on April 16, 2010, he is a paraplegic.  He suffers daily with muscle weakness in his upper extremities and endures constant pain.  Mr. Perez suffers in his lower extremities with contractures, atrophy, muscle spasms and stiffness.  Mr. Perez has upper-mid back pain and burning pain in his lower back.  Mr. Perez suffered and continues to suffer with swelling in his legs and feet.  Mr. Perez has suffered a hernia and broken ankle as a result of the injuries he sustained in the accident of April 16, 2010.

90.     Mr. Perez has suffered and continues to suffer from Major Depression as a result of the injuries he sustained from the more than 20-foot fall to a concrete floor while working on Family Dollar's premises.

91.    As a result of the injuries he sustained while working on Family Dollar's premises, Mr. Perez suffered and continues to suffer with bowel and urinary problems requiring the constant use of adult diapers and the use of catheters every three to four hours per day. Further, he requires medication and suppositories to promote daily bowel movements.  These bowel and urinary problems have caused Mr. Perez to suffer great embarrassment, restriction and social isolation.

92.    In addition, Mr. Perez can no longer engage in sexual relations as a result of his injuries.

93.    Upon information and belief, shortly after Mr. Perez fell and was permanently injured, Family Dollar called a meeting with Warehouse Wholesaler, the Subcontractors, their employees and other personnel working on the Project.  Family Dollar reported that now they would provide the workers with safety equipment, which included fall protection equipment. Family Dollar further told the workers that they would be fined $100 or removed from the Project if they failed to use the safety equipment.

94.    At all times prior to Mr. Perez's accident, Family Dollar had the authority and duty to ensure that workers, including Mr. Perez, were provided with the safety equipment and further had the authority and duty to remove Warehouse Wholesaler and any Subcontractor from the Project who did not utilize such equipment.

95.    Prior to Mr. Perez's accident, Family Dollar failed to require Warehouse Wholesaler or the Subcontractors to adhere to the safety requirements of the Contract, OSHA regulations or Family Dollar's own policies.

95.     Family Dollar likewise failed to remove Warehouse Wholesaler or the Subcontractors for failing to adhere to those safety requirements.

96.     As a result of Mr. Perez's fall of April 16, 2010, on June 1, 2010, the U.S. Department of Labor, Occupational Safety and Health Administration ("OSHA") inspected the Family Dollar work site.

97.     On July 9, 2010, OSHA issued a Citation and Notification of Penalty for a serious violation.  OSHA noted "[e]ach employee walking/working surfaces was not protected from falling through holes (including skylights) more than 6 feet above lower levels by personal fall arrest systems, covers, or guardrail systems erected around such holes."  Further, OSHA stated:

> On or about June 01, 2010 and times prior thereto, at the worksite located at or near 1800 Family Dollar Way, West Memphis, AR 72301, employee(s) performed work on a rack system near an unguarded hole that was approximately 25.5 feet above the ground, exposing the employee(s) to falls of more than 6 feet.  The hole was approximately 48x40 inches.

Copies of the documents and photographs from OSHA are attached hereto collectively as Exhibit D.

98.     The Job Site Work Rules were included in the Contract to ensure that the work was performed in a manner which did not jeopardize the safety of persons working at the Project, including Mr. Perez.

99.     The language of the Contract called for "strict compliance" with the '"Job Site Work Rules" by Warehouse Wholesaler and the Subcontractors.

100.    Family Dollar failed to adequately inspect or supervise the work or enforce these Job Site Work Rules and therefore failed to safeguard Mr. Perez.

101.    Had Family Dollar enforced the terms of the Contract prior to April 16, 2010, or Family Dollar had removed Warehouse Wholesaler, Zakrak or MIM from the Project for failing to adhere to the terms of the Contract prior to April 16, 2010, Mr. Perez would not have fallen.

102.    As a result of Family Dollar's conduct and actions, Mr. Perez sustained injuries which will require constant medical care and assistance for the remainder of his life. The medical bills to date total approximately $483,473.16. An itemization of Mr. Perez's medical bills is attached hereto as Exhibit E.

103.    The anticipated future cost for Mr. Perez's medical-related treatment is at least $3,000,000.

104.    Furthermore, due to Family Dollar's failure to enforce the terms of the Contract, Mr. Perez's employer, MIM, was allowed to work on the Project despite the fact it violated the Contract's provisions regarding insurance. Specifically, MIM had no workers' compensation insurance at the time of Mr. Perez's accident.

105.    Because MIM had no workers' compensation insurance, Mr. Perez was treated as a "charity case" at the Regional Medical center, and only given such treatment to address and stabilize his catastrophic injuries.

106.    Mr. Perez did not receive adequate follow-up treatment, therapy, counseling, medication or medical supplies, which caused additional pain, suffering and injury.

107.    Additionally, as a result of Family Dollar's conduct and actions, Mr. Perez suffered economic losses of approximately $600,000.

108.    Further, because MIM had no workers' compensation insurance, Mr. Perez did not receive temporary total disability benefits to replace his lost income, and suffered severe emotional distress as a result of his lack of income to support himself and his family.

109.    It was not until eleven (11) months after this accident that Warehouse Wholesaler's workers' compensation insurance carrier agreed to accept Mr. Perez's workers' compensation claim as compensable, which belatedly resulted in Mr. Perez receiving some of the treatment, therapy, counseling, medication and medical supplies which he desperately needed.

## V. CAUSES OF ACTION

### A. NEGLIGENCE

110.    Plaintiffs incorporate paragraphs 1 through 109 of the Complaint herein by reference.

111.    At all times relevant herein, Defendants owned and/or controlled the property where the work on the Project took place and where Mr. Perez fell; and, undertook the inspection and supervision of the construction that was being performed at the Project and in connection therewith, established plans, rules, recommendations, designs and specifications for the performance of the construction work.

112.    At all times relevant herein, Defendants having owned and/or controlled the property where the Project occurred and inspected and supervised the work on the Project, owed a duty to those engaged in the performance of the construction work, including Mr. Perez, to provide a reasonably safe environment free from unreasonable hazards to perform the construction work.

113.    At all times relevant herein, Defendants knew or should have known that there existed dangerous conditions at the Project and that there were inadequate safety measures in place, including but not limited to, an absence of any harness, belts or any fall protection in use on the Project.

114.    Defendants, by and through their agents, servants, workman and/or employees, were careless and negligent in:

a.      Failing to provide Mr. Perez with a safe place to work;

b.      Failing to adequately inspect the construction site for hazardous conditions;

c.      Failing to coordinate the supervision and safety protections on the Project with other entities and Contractors including, but not limited to, Warehouse Wholesaler, Zakrak and MIM;

d.      Failing to adequately plan, inspect and supervise the construction work;

e.      Violating applicable OSHA regulations including, but not limited to 29 CFR 1926.501(b)(4)(i);

f.      Breaching its duties under Section 343 of The Restatement of the Law Torts (Second);

g.      Failing to properly train its employees and the employees of the Contractor and Subcontractors;

h.      Failing to hire competent employees, safety inspectors, Contractors and Subcontractors;

     i.     Failing to warn the persons working on the Project, including Mr. Perez, of the dangerous and unsafe conditions existing upon the premises;

     j.     Failing to warn the Contractor and Subcontractors of the dangerous and unsafe conditions then and there existing upon the construction site premises;

     k.     Failing to adopt, enact, employ, and enforce proper and adequate safety programs, precautions, procedures, measures and plans;

     l.     Violating and failing to comply with Federal and State Statutes, local Ordinances, industry custom and all other rules, enactments or regulations applicable, or in effect, be they administrative, industry wide or otherwise pertaining to safety and/or the performance of construction work;

     m.     Failing to perform, supervise or furnish construction services in conformity with the standard of care in the construction industry at the time the services were supplied and furnished;

     n.     Failing to adopt, enact and enforce proper work rules and procedures;

     o.     Performing, supervising, and furnishing construction services in a wholly inadequate and negligent manner;

     p.     Failing to properly inspect and supervise the construction work;

     r.     Failing to require or enforce a policy that required all Contractors and Subcontractors to adhere to specific on site safety rules;

     s.     Failing to require adequate fall protection for the people working at the Project;

t.      Permitting the Contractors and Subcontractors at the Project to work without properly installed fall protection;

u.      Failing to recognize that the fall protection on site was inadequate or non-existent;

v.      Failing to recognize that the inadequate fall protection constituted a hazardous condition;

w.      Failing to provide Mr. Perez and/or other employees with safety harnesses, or belts while working on the job site.

x.      Failing to require adequate fall protection at all times;

y.      Failing to inspect and monitor the fall protection in use to assure that it was adequate;

z.      Failing to provide adequate safety training for Mr. Perez and/or other persons working on the job site;

aa.     Failing to conduct and keep records concerning weekly safety meetings as required by the Contract;

bb.     Failing to require Subcontractors to conduct and keep records concerning weekly safety meetings as required under the Contract;

cc.     Failing to ensure that work rules were complied with by the Contractor and Subcontractors for the Project;

dd.     Violating the Contract and/or specifications for the Project;

ee.    Engaging in acts of negligence *per se* by violating and failing to comply with Federal and State Statutes, OSHA regulations, Local Ordinances, and all other rules, enactments or regulations applicable, or in effect, pertaining to safety and/or the performance of work on the Project;

ff.    Supervising, retaining and entrusting the function of providing construction services at the Project to various Subcontractors despite knowledge or notice that such Subcontractors were not adequately and safely providing such services;

ii.    Failing to adequately and safely train persons working on the Project;

jj.    Failing to properly supervise the persons working and work being performed on the Project; and,

kk.    Failing to ensure that Contractors and Subcontractors working on the Project procured and maintained the appropriate insurance coverage as required by the Contract.

115.    By reason of the negligence of the Defendants, Mr. Perez suffered severe and devastating permanent injuries.  He suffered multiple injuries, including but not limited to lacerations, concussion, rib fractures, hernia, an ankle fracture, a fracture of the lower thoracic spine resulting in complete paraplegia and requiring that he undergo spinal decompression and fusion from T9 to L3 and complete laminectomy T12.  He now is required to wear adult diapers and utilize catheters, medications and suppositories, in order to urinate and defecate.  He can no longer engage in sexual relations.  He has been forced to undergo extensive hospitalization and physical therapy.  He has suffered other orthopedic, neurological, psychological and psychiatric injuries, the full extent of which have yet to be determined.  He has in the past and will in the future continue to require medicines, medical aid, medical care, treatment and rehabilitation.  He

24

has incurred significant medical expenses. He has in the past and will in the future continue to suffer agonizing aches, pains, suffering and mental anguish. He has in the past and will in the future continue to be permanently disabled from performing his usual duties, occupations and avocations, all to his great loss and detriment. He has sustained a loss of earnings and a loss of future earning capacity. He has endured pain and suffering. He has in the past and will in the future continue to suffer the loss of life's pleasures as a result of his injuries. Plaintiffs' damages greatly exceed $75,000 as to this Count.

### B. GROSS NEGLIGENCE

116.    Plaintiffs incorporate paragraphs 1 through 115 of the Complaint herein by reference.

117.    Defendants' actions and/or inactions rise to the level of indifference to a significant degree of which through the exercise of reasonable care Defendants knew or should have known.

118.    The actions and/or inactions complained of herein constitute gross negligence.

119.    Plaintiffs suffered injuries and damages as a result of Defendants' gross negligence. Plaintiffs' damages greatly exceed $75,000 as to this Count.

### C. NEGLIGENT HIRING

120.    Plaintiffs incorporate paragraphs 1 through 119 of the Complaint herein by reference.

121.    Defendants actions in hiring and/or approving Contractors and Subcontractors that were not qualified to perform the work in a reasonable and safe manner, and who could not provide the proof of insurance as required by the Contract, constitutes negligent hiring.

123.    Defendants' negligence in hiring and/or approving Warehouse Wholesaler, Zakrak, and MIM resulted in injuries and damages to Plaintiffs.  Plaintiffs damages greatly exceed $75,000 as to this Count.

## D. NEGLIGENT RETENTION

124.    Plaintiffs incorporate paragraphs 1 through 123 of the Complaint herein by reference.

125.    Defendants' actions and/or inactions in failing to obtain the proof of insurance as required in the Contract, and failing to require the Contractor and Subcontractors to comply with the safety rules in the Contract, Family Dollars' policies, OSHA regulations and industry standards constitute negligent retention of Warehouse Wholesaler, Zakrak, and MIM.

126.    Defendants' negligence in retaining Warehouse Wholesaler, Zakrak, and MIM to work on this Project resulted in injuries and damages to Plaintiffs.  Plaintiffs' damages greatly exceed $75,000 as to this Count.

## E. AGENCY

127.    Plaintiffs incorporate paragraphs 1 through 126 of the Complaint herein by reference.

128.    Warehouse Wholesaler, Zakrak, and MIM were the actual and/or apparent agents of Defendants and Defendants are liable for the actions committed by its agents pursuant to the principles of vicarious liability.

129.    Plaintiffs suffered injuries and damages as a result of the actions and/or inactions of Defendants' agents.  Plaintiffs damages greatly exceed $75,000 as to this Count.

## F.  BREACH OF CONTRACT

130.    Plaintiffs incorporate paragraphs 1 through 129 of the Complaint herein by reference.

131.    Mr. Perez was the intended third-party beneficiary of the safety and insurance provisions of the Contract, including those found in Articles 10, 19, 26 and 28.

132.    The Contractors and Subcontractors hired and/or approved by Defendants violated the safety and insurance provisions in the Contract, including those found in Articles 10, 19, 26 and 28.

133.    Defendants likewise breached the Contract by not requiring the Contractors and Subcontractors to adhere to the terms of the Contract, and not removing, disqualifying or terminating the Contractors and Subcontractors for their violations of the Contract.

134.    Plaintiffs suffered injuries and damages as a result of the breach of contract referenced above.  Plaintiffs' damages greatly exceed $75,000 as to this Count.

### G. LOSS OF CONSORTIUM

135.    Plaintiffs incorporate paragraphs 1 through 134 of the Complaint herein by reference.

136.    At all times relevant herein, Ms. Cadena was and is the wife of Mr. Perez.

137.    As a result of the actions or inactions of the Defendants complained of herein, Ms. Cadena was caused to suffer and will continue to suffer in the future, loss of consortium, loss of society, affection, assistance and conjugal fellowship previously afforded to her by Mr. Perez.

138.    The aforementioned injuries and damages sustained by Ms. Cadena were solely and proximately caused by the negligent acts of the Defendants.  Ms. Cadena's damages greatly exceed $75,000 as to this Count.

### VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs claim in excess of $18,000,000 in damages against Defendants, exclusive of interest, costs, damages and attorneys' fees for:

    a.    Physical and psychological injuries caused by, aggravated by or precipitated by the wrongs complained of herein;

    b.    Great fright and shock;

    c.    Great physical pain and suffering, both past and future;

    d.    Great mental and emotional anguish, both past and future;

    e.    Medical expenses incurred to date, and which are ongoing;

    f.    Future medical expenses;

g.     Inability to enjoy the normal pleasures of life, both past and future;

h.     Lost earning capacity, both past and future;

i.     Lost wages, both past and future;

j.     Disfigurement;

k.     Loss of consortium; and,

l.     Mr. Perez's state of permanent paraplegia and lifetime confinement to a wheelchair.

Plaintiffs request a jury be empanelled to consider the issues raised in this case and enter Judgment therein.

Respectfully submitted:

JAMES M. SIMPSON, AR BAR NO.: 2006115
KIRK A. CARAWAY, TN BAR NO.: 18578
ALLEN, SUMMERS, SIMPSON, LILLIE
& GRESHAM, PLLC
80 Monroe Avenue, Suite 650
Memphis, Tennessee 38103
Telephone:  901-763-4200
Facsimile:  901-684-1768
Email: jsimpson@allensummers.com

RALPH NOYES, TN BAR NO.:  20586
Law Office Of Ralph Noyes
3355 Poplar #107
Memphis, Tennessee 38111
Telephone:  901-325-1444
Facsimile:  901-325-1409
Email: ralph_noyes@hotmail.com

Motions for *Pro Hac Vice* Admission as to
Mr. Caraway and Mr. Noyes to be Filed

ATTORNEYS FOR PLAINTIFFS

29